Mack SANDERS, et al., Plaintiffs,

Jane Forbes, Trustee,
Plaintiff–Appellant,

v.

FIRST NATIONAL BANK & TRUST COMPANY IN GREAT BEND,
Defendant–Appellee.

No. 90–5846.

United States Court of Appeals,
Sixth Circuit.

Submitted May 10, 1991.

Decided June 24, 1991.

William P. Sutherland, W. Warner McNeilly, Jr., John B. Carlson, Watkins, McGugin, McNeilly & Rowan, Nashville, Tenn., for plaintiffs and plaintiff-appellant.

William R. O'Bryan, Jr., Anita L. Whisnant, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for defendant-appellee.

Before KENNEDY and MARTIN, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Jane Forbes, the bankruptcy trustee, appeals the district court dismissal of her claims in this lender liability action against the First National Bank and Trust Company in Great Bend, Kansas. 114 B.R. 507. Forbes first contends that the district court erred in concluding that her claims were compulsory counterclaims in prior litigation and, thus, are barred from being raised in this action. She also contends that the district court erred in concluding that there were insufficient contested facts to warrant a trial with regard to her assertions that (1) the bank violated the bank Holding Company Act, (2) the bank committed fraud and duress in its institution of collection procedures against the bankrupt, and (3) the bank breached its duty of good faith. For the reasons that follow, we affirm.

Mack Sanders is a businessman who, during the period relevant to this action, owned and operated several radio stations. He owned 100% of the stock of JACO, Inc., which, in turn, owned all of the stock of MetroGeneral Communications, Inc. MetroGeneral Communications owned all the stock of three subsidiaries: MetroGeneral of Nashville, MetroGeneral of Knoxville, and MetroGeneral of Alabama. The subsidiaries, in turn, owned several radio stations in the southeastern United States. Sanders, his wife Sherry Sanders, and all of Sanders' corporations are parties to bankruptcy proceedings. Jane Forbes is the appointed and acting trustee for all of these parties.

Mack Sanders, Sherry Sanders, and JACO had been long standing customers of First National Bank and Trust Company in Great Bend. By 1986, Mack and Sherry Sanders and JACO owed the bank a total of 1.2 million dollars from eight separate promissory notes. Mack Sanders personally guaranteed all the obligations of Sherry Sanders and JACO and Sherry Sanders personally guaranteed all obligations of Mack Sanders. Their financial condition had greatly worsened as a result of the failure to successfully sell six of their radio stations. By the end of 1986, for a variety of reasons, all of the notes were in default.

Earlier in March of 1985, the Sanders' radio stations were sold to Elf Communications, Inc. for twelve million dollars. As part of the purchase price, Elf executed two three-million-dollar notes payable to MetroGeneral and its three subsidiaries. A lien on the radio stations secured these notes for MetroGeneral, but the lien was subordinate to the debt of two other lienholders, thus MetroGeneral was a junior lienholder as to the radio stations. To as-

sist Elf in acquiring the stations, Mack Sanders obtained two $750,000 letters of credit in his own name. The letters of credit ran in favor of the senior lienholders; thus, securing a portion of Elf debt to those senior lienholders. One of the letters of credit was issued by the First National Bank and Trust Company in Great Bend, the defendant here.

Elf made only one payment on the two notes payable to MetroGeneral before defaulting. The only substantial income the Sanders had at this time was derived from JACO and MetroGeneral and the sale of the radio stations. When Elf failed to pay its debts, Mack Sanders, Sherry Sanders, and JACO were unable to satisfy the terms of their loans with the bank. Consequently, those loans became delinquent and fell into default.

In March 1986, Sanders sold the stations a second time, this time to Rebs, Inc., and three Rebs subsidiaries. As part of the purchase price, Rebs assumed liability on the two three-million-dollar notes previously executed by Elf to MetroGeneral and MetroGeneral's subsidiaries. Repeating the performance of Elf, in June of 1986, Rebs stopped making payments to Metro-General and less than a year later, Rebs filed for bankruptcy.

Mack Sanders again renewed his efforts to find a purchaser for the radio stations but was totally unsuccessful; thus, he continued to have difficulty paying on these loans. Great Bend First National representatives met with Mack Sanders in January 1987. The representatives advised Sanders that, if he wanted the bank to continue working with him regarding repayment of his debt, additional collateral was necessary. Sanders agreed to pledge the interest of MetroGeneral in the two three-million-dollar notes, apparently the only remaining valuable asset controlled by him. Among other things, the January 28, 1987 security agreement between Sanders and the bank provided:

> First National is accepting the additional collateral provided for in this Security Agreement in lieu of taking any immediate action to collect the indebtedness

presently owed to it by the debtors but is not agreeing to refrain, for any specific length of time, from taking such action to collect the indebtedness owed to it by the debtors....

The agreement also provided that Sanders and his corporations would be in default if any of the parties to the agreement filed a bankruptcy petition and that, upon default, the bank could demand the collateral.

On March 3, 1987, just over one month following the execution of the security agreement, Mack Sanders, JACO, and MetroGeneral voluntarily filed for bankruptcy relief. Sanders testified in his deposition that there had been a rumor the bank intended to begin legal proceedings to collect the outstanding debts. Sanders also admits that pressure from the federal tax authorities precipitated his filing for bankruptcy relief.

After Mack Sanders, JACO, and Metro-General filed for bankruptcy relief, the bank filed suit against Sherry Sanders in United States District Court for the Middle District of Tennessee on her notes and her written guarantees of her husband's indebtedness. On April 13, the district court entered a judgment against Sherry Sanders, and on April 29, she filed a voluntary Chapter VII bankruptcy petition.

On December 17, the trustee for Metro-General placed the MetroGeneral subsidiaries into bankruptcy.

On December 23, following Mack Sanders' bankruptcy filing, in an adversary proceeding, the bankruptcy court found that Sanders had misrepresented his financial condition by seven million dollars and granted a non-dischargeable judgment in favor of First National of Great Bend against him in the amount of $1,583,361.25. On May 22, 1988, the bankruptcy court entered a judgment against Sherry Sanders, holding that the district court judgment against her was not dischargeable in bankruptcy.

On June 27, during the pendency of the bankruptcy proceedings, the trustee filed this action against the bank alleging that the defendants wrongfully instituted collection proceedings, thus forcing Mack Sand-

ers, Sherry Sanders and their corporations into bankruptcy. Forbes alleged that the bank was guilty of fraud, duress, violating the bank Holding Company Act, and breach of the duty of good faith. She sought damages in excess of fifty million dollars. The district court dismissed her complaint, finding that her claims were barred because they were required to be brought as compulsory counterclaims in the previous legal proceedings and that she failed to present sufficient evidence to prove any of her claims. Forbes filed this timely appeal.

The bank concedes that Forbes' claims on behalf of Mack Sanders are not barred by the post-petition judgment against Mack Sanders. The bank agrees that any cause of action Mack Sanders possessed against them at the time of his bankruptcy filing would be property of the estate pursuant to 11 U.S.C. § 541. *See Bauer v. Commerce Union*, 859 F.2d 438 (6th Cir.1988). Consequently, we limit our review of the district court's ruling on compulsory counterclaims to those now being asserted on behalf of Sherry Sanders.

▮▮▮ Forbes contends that those claims she is asserting on behalf of Sherry Sanders in this action were merely permissive counterclaims in the previous federal actions and the judgments obtained in those actions are not a bar. Fed.R.Civ.P. 13(a) provides:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication of the presence of third parties of whom the court cannot acquire jurisdiction.

*See* Bankr. Rule 7013, 11 U.S.C. (Rule 13 applies in the main to adversary bankruptcy proceedings). As this court explained in *Maddox v. Kentucky Finance Company, Inc.*, 736 F.2d 380 (6th Cir.1984), a compulsory counterclaim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. *Id.* at 382. It is well established that an opposing party's failure to plead a compul-

sory counterclaim forever bars that party from raising the claim in another action. *See Baker v. Golden Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974).

This circuit applies the "logical relationship" test for determining whether a claim arises out of the same transaction or occurrence. *Id.* Under this test, we determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). The bank sued Sherry Sanders in the United States District Court on the promissory notes that she executed in 1986 and on her guarantees of her husband's debt. At no time during the proceedings did Sherry Sanders raise any of the claims now asserted by Forbes. The facts and the evidence necessary to support any claims for wrongful collection of the notes, breach of the statutory duty of good faith, fraud and duress would involve largely the same issues of fact and the same evidence as that necessary for the pre-petition judgment. Accordingly, such defenses for claims of wrongful conduct on the part of the bank should have been raised during the previous federal court litigation relating to Sherry Sanders' liability. The logical relationship test may be nebulous in certain applications, but not in this one. Sherry Sanders' claims are based on a written agreement in which the bank agreed to refrain from immediate action to collect upon notes she owed. Those notes were the subject matter of the previous litigation in district court. Any claims that the bank wrongfully took action to collect the notes should have been made at that time.

▮▮▮ On the second basis for review argued by Forbes, we find that the district court properly dismissed the trustee's claims because she has failed to present evidence sufficient to prove her claims. Forbes first contends that the district court erred in dismissing her claim that the bank violated the anti-tying provision of the bank Holding Company Act, 12 U.S.C.

§ 1972, by taking new collateral in exchange for its agreement not to immediately proceed with collection efforts. A plaintiff must prove three things to recover under the anti-tying provisions of 12 U.S.C. § 1972: (1) an anticompetitive tying arrangement; (2) the banking practice at issue was unusual in the banking industry; and (3) the practice must benefit the bank. *Rae v. Union Bank*, 725 F.2d 478, 480 (6th Cir.1984). Forbes has not alleged sufficient facts to satisfy either of the first two prongs of this test. A condition that a heavily indebted bank customer provide additional collateral in exchange for forbearance on collection of a defaulted note does not violate the bank Holding Company Act. Such a requirement is within the bounds of ordinary, customary, and traditional banking practices. *See, e.g., Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 459 A.2d 1163 (1983) (requirement of additional security in exchange for more funds does not violate Act). The record is also devoid of any proof that the bank tied its work-out negotiations with Mack Sanders and his corporations to any other bank service or benefit. Mack Sanders was only advised that if he wanted additional time to repay his defaulted loans, collateral was needed to secure the debt. In view of the financial conditions of Mack Sanders, Sherry Sanders and their corporations, including pressure from the IRS, this request was reasonable. The district court properly dismissed this claim.

■ Forbes also asserts that the district court improperly dismissed her claims for fraud or duress. Essentially, she is alleging that the bank intentionally deceived Mack Sanders into signing the security agreement and giving the bank additional collateral. She alleges that the bank had no intention of honoring its obligations under the security agreement at the time the bank executed that agreement with Mack Sanders. The district court correctly noted that this was, in fact, a claim for "promissory fraud."

■ To prevail under the promissory fraud theory in Tennessee, Forbes must establish that the bank made a promise of future conduct with the present intention not to perform the promise. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn.1978). The only proof in the record which is offered to support the showing of promissory fraud is Mack Sanders' deposition testimony with regard to his subjective belief about the bank's intentions. The bank in the security agreement agreed to withhold "immediate action" but it did not agree to "refrain, for any specific length of time" from collecting the debt Mack Sanders, Sherry Sanders or their corporations owed. Mack Sanders testified in his deposition that he thought the bank would "wait a long time" before acting to collect his debt. Sanders also testified in his deposition that he heard a rumor the bank was going to take action on his debt. Beyond Sanders' testimony as to the rumor, there is no evidence in the record concerning the timing of the alleged decision by the bank to begin collection efforts. The trustee asserts that the fact the bank began collection efforts soon after the security agreement was executed is proof that the bank did not intend to honor the agreement. Without more supporting evidence, Sanders' testimony and the timing of the collection efforts are insufficient to establish that the bank made promises that it did not intend to keep. *Fowler*, 575 S.W.2d at 499. Thus, the district court properly determined that there is insufficient evidence in the record to support the plaintiff's allegation of fraud.

■■ Similarly, the district court properly held that the plaintiff failed to present evidence to create a material issue of fact on the claim of duress. Under Tennessee law, economic duress "consists of imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another." *Crocker v. Schneider*, 683 S.W.2d 335, 338 (Tenn.App. 1984). A contract entered into involuntarily because of fraud may be voidable because of economic duress. *Crocker*, 683 S.W.2d at 339. Nothing in the record suggests an inference of bad faith or economic duress. Again, given the financial circum-

stances of Mack Sanders, Sherry Sanders, and their corporations at the time of the security agreement negotiations, the request for additional collateral in exchange for forbearance from immediate action was reasonable.

Lastly, Forbes asserts that the district court improperly dismissed her claim that the bank breached the duty of good faith. Tenn.Code Ann. § 47–1–203 provides that "every contract ... imposes an obligation of good faith in its performance or enforcement." Forbes alleges that the bank breached its duty of good faith to the Sanders and their corporations by entering into the security agreement and accepting additional collateral without the intention of abiding by the provisions which forbid immediate collection action. Again, no facts in the record indicate that the bank negotiated in bad faith. In fact, the bank took no collection action against the Sanders or their corporation prior to the bankruptcy petitions of Mack Sanders and JACO, which were default conditions on the debt. The district court properly dismissed Forbes' claim of a breach of the duty of good faith.

For the foregoing reasons, we affirm the judgment of the district court.