OPINION
Defendants-Appellants Charles E. Bowman, Randy J. Bowman, Arlen R. Bowman, Janice R. Bowman, and Terry N. Bowman (hereinafter "the Bowman defendants") appeal the May 27, 1999, decision and entry of the Montgomery County Common Pleas Court, Probate Division, granting summary judgment in favor of Dulcie Bowman and her attorney-in-fact (and son), James Bowman (hereinafter "Dulcie") on a counterclaim asserted by the Bowmans in their amended answer to Dulcie's complaint. The probate court's decision was made a final appealable order by the June 21, 1999, filing of an agreed entry dismissing both parties' remaining claims.
On June 13, 1996, Dulcie signed an antenuptial agreement with her soon-to-be husband, Henry Bowman (hereinafter "Henry"). Pursuant to the agreement, each of the parties to it were to retain ownership and control of all his or her respective real and personal property acquired before or after the marriage. Dulcie and Henry both attached their own "Statement of Assets" to the agreement that, although subsequently found to be otherwise, purported to be an exhaustive list of each betrothed's assets. In particular, and relevant to the present appeal, however, Henry's Statement of Assets did include a reference to a Fidelity Magellan 401-K account having an approximate balance of $60,000 on the date of the agreement. None of the other assets, whether included or mistakenly left off of the Statements of Assets, are at issue in the instant case.
Shortly after executing the antenuptial agreement, Dulcie and Henry were married. Henry died testate less than six months later, leaving all of his assets to his heirs, the Bowman defendants.
According to the parties' briefs, Dulcie filed suit in the United States District Court for the Southern District of Ohio, Western Division, in October of 1997, seeking declaratory and injunctive relief regarding the distribution of Henry's 401-K funds. The Bowman defendants argued in federal court that the antenuptial agreement between Dulcie and Henry constituted a relinquishment by Dulcie of any right to the proceeds of Henry's 401-K plan. Dulcie filed a motion for summary judgment claiming the antenuptial agreement was not a valid waiver of her right to Henry's 401-K funds based on the requirements set forth by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") and the plan itself. In a supplemental memorandum in opposition to Dulcie's motion for summary judgment, the Bowman defendants argued that even if the antenuptial agreement were not an effective waiver of Dulcie's rights to the 401-K funds according to the requirements of ERISA, the agreement itself required her to "give any instruments of conveyance or to perform any other act which may be required of [her] to release any and all claims of right, title and interest which [she] might have . . . acquired by reason of [the] marriage." Docket No. 14 at 3. Therefore, the Bowman defendants contended, Dulcie would not be entitled to the proceeds of the 401-K plan regardless of whether the antenuptial agreement was a waiver of her rights to the funds pursuant to ERISA because the agreement imposed independent and enforceable contractual duties upon her to take any steps necessary to ensure that Henry's estate received the proceeds of the plan.
In his decision and entry on the matter, the Honorable Judge Walter Herbert Rice granted summary judgment in favor of Dulcie, finding that the antenuptial agreement did not comport with the requirements of ERISA or the plan itself insofar as a waiver is concerned. Bowman v. Bowman (S.D.Ohio, Sept. 21, 1998), Case No. C-3-97-480. Judge Rice made no explicit conclusions respecting the Bowman defendants' argument that Dulcie would be required to surrender the proceeds of the 401-K account under the separate and enforceable contractual obligations she had assumed by signing the antenuptial agreement.
 During the pendency of the federal case, Dulcie filed a complaint to set aside the antenuptial agreement in the Common Pleas Court of Montgomery County, Probate Division. In their December 21, 1998, amended answer to Dulcie's complaint, the Bowman defendants asserted a counterclaim alleging that Dulcie had breached the terms of the antenuptial agreement by filing her suit for declaratory and injunctive relief in federal court. In March of 1999, Dulcie filed a motion for summary judgment on the Bowman defendants' counterclaim in the probate court contending the matter was barred by the doctrine of res judicata
because Judge Rice had considered and disposed of the Bowman defendants' claim in the federal case. The Bowman defendants opposed Dulcie's motion for summary judgment arguing that as Judge Rice's decision was limited to whether the antenuptial agreement fulfilled the ERISA waiver requirements, their breach of contract claim was not barred by the doctrine of res judicata.
On May 27, 1999, the probate court issued a decision and entry on the matter, which stated, in its entirety, as follows:
 This cause came before the Court by Motion for Summary Judgment in Favor of Dulcie Bowman, filed through counsel, on March 18, 1999. Also before the Court is Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment, filed through counsel on April 20, 1999. Also before the Court is Plaintiffs' Response to Memorandum to Defendant's Response to Plaintiffs' Motion of [sic] Summary Judgment, filed through counsel on April 22, 1999.
The Court, after reviewing the pleadings herein, hereby finds that the Motion for Summary Judgment in favor of Dulcie Bowman, et al, as to the * * * [breach of contract] Counter-Claim contained with the Amended Answer to Complaint to Set Aside Antenuptial Agreement and Counterclaims, is hereby granted to Plaintiffs against Defendants.
Docket No. 14 at 1-2. In a subsequent agreed entry filed on June 21, 1999, all outstanding claims and counterclaims were dismissed, and the probate court's May 27, 1999, decision and entry was thereby rendered a final appealable order. The same day, the Bowman defendants filed their notice of appeal.
Before turning to the merits of the Bowman defendants' assignment of error, we note that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. ClevelandCity Schools (July 10, 1997), Cuyahoga App. No. 71283, unreported, citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116,119-20. In other words, we review the trial court's decision without according it any deference. Brown v. Scioto Cty. Bd. OfCommrs. (1993), 87 Ohio App.3d 704, 711.
Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant. With these principles in mind, we proceed to consider whether the probate court's grant of summary judgment in Dulcie's favor was appropriate.
The sole assignment of error before us is presented by the Bowman defendants as follows:
 The trial court errored [sic] in granting appellees' motion for summary judgment based on res judicata or collaterial [sic] estoppel where Appellants' claimed a breach of a [sic] antenuptial agreement which was not addressed by the United States District Court opinion which was relied upon as a basis for the finding of res judicata or collaterial [sic] estoppel.
In their assignment of error, the Bowman defendants claim that the probate court erred in finding the doctrine of resjudicata applicable to their breach of contract counterclaim against Dulcie. They argue that Judge Rice's opinion focused on whether the antenuptial agreement satisfied the waiver requirements of ERISA and Henry's employer's 401-K plan, and not whether Dulcie had breached any provision of the antenuptial agreement. Although this general statement is correct, we conclude that the trial court did not err in granting summary judgment in favor of Dulcie on the Bowman defendants' breach of contract counterclaim because by failing to assert their counterclaim in the federal suit, they have waived their right to assert it in all subsequent actions.
Fed.R.Civ.P. 13(a) provides, in relevant part, as follows:
 Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.
See also Civ.R. 13(A) (identical in all respects to the federal rule). The Sixth Circuit Court of Appeals has recently observed that to be compulsory under Fed.R.Civ.P. 13(a), a counterclaim must also be "one that the party `has' at the time that the party is to file his responsive pleading." Kane v. Magna Mixer Co.
(C.A.6, 1995), 71 F.3d 555, 562, citing Harbor Ins. Co. v.Continental Bank Corp. (C.A.7, 1990), 922 F.2d 357, 360. A counterclaim is compulsory if it is "so closely related to claims within the [federal] court's jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Sixth Circuit has adopted the "logical relation" test for use in determining whether a counterclaim is compulsory. Maddox v. Kentucky Finance Co.,Inc. (C.A.6, 1984), 736 F.2d 380, 382. Under that test, consideration is given as to whether the claim and counterclaim present legal, factual, and evidentiary questions that are largely the same, and whether the interests of judicial economy and efficiency will be served by requiring the claims to be heard together. Id. at 383.
Compulsory counterclaims fall within the federal court's supplemental jurisdiction even where there is no independent basis for federal jurisdiction. Unique Concepts, Inc. v. Manuel (C.A.7, 1991), 930 F.2d 573, 574. See also BIW Deceived v. Local S6
(C.A.1, 1997), 132 F.3d 824, 833 (stating "[a] federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state law claims that arise from the same nucleus of operative facts," citing28 U.S.C. § 1367(a)). Furthermore, the provisions of Fed.R.Civ.P.13(a) are mandatory and require that such a counterclaim be pleaded and adjudicated; if it is not, all right of action thereon is foreclosed. New Britain Mach. Co. v. Yeo, (C.A.6, 1966),358 F.2d 397, 410.
For the reasons that follow, we find that the Bowman defendants' breach of contract counterclaim was a compulsory counterclaim that should have been pled in the federal suit, and that in failing to do so, the Bowman defendants have waived their right to assert the counterclaim in the subsequent state action.
The issue before the federal court was whether Dulcie was entitled to the proceeds of Henry's 401-K plan. In Sanders v.First Nat'l. Bank Trust (C.A.6, 1991) 936 F.2d 273, 277, the court applied the logical relation test stating the following:
 The logical relationship test may be nebulous in certain applications, but not in this one. Sherry Sanders' [plaintiff in the current case, and defendant in the previous federal suit] claims are based on a written agreement [wherein the bank, a defendant in this suit, and a plaintiff in the prior suit, agreed] to refrain from immediate action to collect upon notes she owed. Those notes were the subject matter of the previous litigation in district court. Any claims that the bank wrongfully took action to collect the notes should have been made at that time.
We find the court's reasoning in Sanders to be equally applicable in the present case. Thus, the Bowman defendants' breach of contract counterclaim is based on a written agreement wherein Dulcie agreed to relinquish her interest in the 401-K funds. Those funds were the subject matter of the federal suit, and the Bowman defendants were consequently required to plead as a counterclaim their argument that Dulcie was obligated under the antenuptial agreement to forego her interest in the 401-K plan and execute any documents necessary to effect disbursement to Henry's estate. That this argument was presented in the Bowman defendants' supplemental memorandum in opposition to Dulcie's motion for summary judgment is insufficient to avoid the result of their failure to plead it as a counterclaim. New Britain Mach.Co., supra.
We recognize that under Ohio law, the consequence of a defendant's failure to plead a compulsory counterclaim is the application of the doctrine of res judicata. See Blymiller v.Blymiller (1996), 111 Ohio App.3d 644; Quintus v. McClure (1987),41 Ohio App.3d 402; Stults Associates, Inc. v. United MobileHomes, Inc. (Oct. 14, 1998), Marion App. No. 9-97-66, unreported;Thompson v. Hook (Apr. 28, 1995), Montgomery App. No. 14604, unreported. The Sixth Circuit Court of Appeals, however, has stated the following with regard to the effect of a defendant's failure to plead a compulsory counterclaim:
 Having concluded that * * * [the third party defendant's] counterclaim was compulsory and required to be raised in the * * * [state] action, we need only determine the effect of * * * [the third party defendant's] failure to do so. This court stated in another context:
 As has been pointed out by a text writer, the result that a compulsory counterclaim is barred if not asserted as required by the rule is not spelled out in the rule itself. However, this result is well established by the cases, sometimes on a theory of res judicata and sometimes on a theory of waiver or estoppel. 6 C. Wright A. Miller, Federal Practice and Procedure, § 1417 (1971). This text prefers the waiver or estoppel theory because in some cases in which a claim is held to be barred the doctrine of res judicata does not fit and also because the waiver or estoppel theory allows more discretion not to hold the claim is barred where to do so is manifestly unjust.
 Carnation Co. v. T.U. Parks Constr. Co., 816 F.2d 1099, 1103 (6th Cir. 1987) (determining effect of failing to assert compulsory counterclaim under Tennessee rule identical to Rule 13(a)). In most instances, application of either res judicata or waiver principles will yield the same result, but, like the panel in Carnation, we prefer the flexibility of a waiver analysis to the more rigid rules applicable to res judicata.
Kane, supra at 562-63. Thus, we conclude that the Bowman defendants' breach of contract counterclaim against Dulcie was compulsory and should have been brought in the federal district court case. Since it was not, the Bowman defendants have waived any opportunity to assert it in a subsequent suit, as they have tried to do in the instant case. We find no error by the probate court in its grant of summary judgment in favor of Dulcie and against the Bowman defendants.
Accordingly, the Bowman defendants' sole claim of error is overruled, and the judgment of the probate court is affirmed.
BROGAN, J., and GLASSER, J., concur.