IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs January 14, 2009

**WESLEY ROBERTS**
**v.**
**WILLIAM D. VAUGHN**

**An Appeal from the Circuit Court for Madison County**
**No. C-07-64     Donald H. Allen, Judge**

---

**No. W2008-01126-COA-R3-CV - Filed June 10, 2009**

---

This appeal involves the doctrine of *res judicata*. The plaintiff and the defendant had several business dealings, including loans, a marketing consultant agreement, and a lease agreement. The plaintiff filed a lawsuit against the defendant in general sessions court to recover monies allegedly owed under the marketing consultant agreement. The defendant failed to answer or appear. The general sessions court entered a default judgment in favor of the plaintiff. The plaintiff then filed the instant lawsuit against the same defendant in circuit court. In the circuit court lawsuit, the plaintiff sought to recover monies that the defendant allegedly owed from all of the parties' financial dealings, including the marketing consultant agreement that was the subject of the previous general sessions judgment. The trial court granted summary judgment in favor of the defendant based on *res judicata*. The plaintiff now appeals. We affirm as to the claims in circuit court based on the marketing consultant agreement. As to the remaining claims, we reverse, finding that the defendant failed to establish that they are part of the cause of action that was adjudicated in the general sessions court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is**
**Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Marlene Simpson, Jackson, Tennessee, for the Plaintiff/Appellant, Wesley Roberts.

William D. Vaughn, Columbus, Georgia, Defendant/Appellee, *pro se*.

## OPINION

### FACTS AND PROCEDURAL HISTORY

This appeal arises out of the business dealings between Plaintiff/Appellant Wesley Roberts ("Roberts") and Defendant/Appellee attorney William Vaughn ("Vaughn").[1] During the course of the parties' business relationship, they entered into several financial arrangements. From August 2004 to July 2006, Roberts gave Vaughn several personal loans.[2] On September 1, 2004, the parties entered into a written Marketing Consultant Agreement, under which Roberts was to provide marketing services in exchange for twenty-five percent of the profits of Vaughn's law firm.[3] Several months later, in December 2004, Roberts entered into an agreement to lease real property to Vaughn.[4] Roberts also purchased various supplies for Vaughn's law firm.

In December 2006, Roberts filed a lawsuit against Vaughn in the Madison County General Sessions Court to recover monies that Vaughn allegedly owed him under the Marketing Consultant Agreement. Vaughn failed to answer the complaint or appear at the hearing.

Roberts' compensation under the Agreement was a percentage of the profits of Vaughn's law firm. Because Roberts did not have information on the law firm's profits, the General Sessions Court estimated the amount that Vaughn owed Roberts under the Agreement. Based on this estimate, in January 2007, the General Sessions Court entered a default judgment in favor of Roberts in the amount of $10,630. There was no appeal from the General Sessions Court judgment.

Three months later, on March 6, 2007, Roberts filed the instant lawsuit against Vaughn in the Madison County Circuit Court. In this lawsuit, Roberts sought to collect from Vaughn the monies owed Roberts for the personal loans made to Vaughn from August 2004 to July 2006, the rent due under the December 2004 oral lease agreement, the proceeds of a refund check for advertising that Vaughn received in May 2006, the cost of the supplies that Roberts purchased for Vaughn's law firm, and the correct amount of monies owed by Vaughn under the Marketing Consultant Agreement. Vaughn's answer to Roberts' complaint alleged, *inter alia*, that the doctrine of *res judicata* barred the entire Circuit Court action, based on the judgment in the General Sessions Court.

---

[1]Because this appeal arises out of a grant of summary judgment, we assume the truth of the non-movant's factual allegations. ***See Foster Bus. Park, LLC v. Winfree***, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *22 (Tenn. Ct. App. Jan. 15, 2009).

[2]In August 2004, Roberts loaned Vaughn $25,000, and between December 2005 and July 2006, Vaughn borrowed an additional $31,500 from Roberts.

[3]The Marketing Consultant Agreement was between W. Roberts & Company and The Vaughn Law Firm, signed by Roberts and Vaughn, respectively, as representatives of those companies.

[4]Roberts alleges that he and Vaughn entered into an oral lease agreement for a three-year lease. Roberts asserts that Vaughn paid three months' rent and occupied the rental premises for one year.

On January 15, 2008, Vaughn filed a motion for summary judgment, arguing that the previous General Sessions judgment barred Roberts from pursuing this lawsuit, under the doctrine of *res judicata*. In the motion, Vaughn argued that Roberts' Circuit Court lawsuit presented claims that were between the same parties and involved the same set of facts and circumstances that were at issue in the General Session lawsuit. In support, Vaughn pointed to the Marketing Consultant Agreement, which was at issue in the General Sessions lawsuit and was attached to Roberts' Circuit Court complaint.

In support of his motion for summary judgment, Vaughn filed his own affidavit, asserting that the parties in both the General Sessions lawsuit and the Circuit Court lawsuit were the same, and that a final judgment was rendered in the General Sessions lawsuit and was not appealed. He stated that the General Sessions lawsuit "regarded the same facts and business relationship between the parties in [the Circuit Court lawsuit] which is the issue of the [Marketing Consultant Agreement] listed as Exhibit E attached to the [Circuit Court] complaint as it was also attached to the General Session[s]" complaint.

In response, Roberts conceded that the parties in both lawsuits were the same and that the General Sessions Court was a court of competent jurisdiction. He contended, however, that *res judicata* was not applicable because the cause of action was not the same. He claimed that he had "not been given the opportunity to discover" the amount due him under the Marketing Consultant Agreement. The other claims, he contended, did not arise from the Marketing Consultant Agreement. Roberts also argued that the General Sessions judgment was not a final judgment on the merits because Vaughn did not appear and a default judgment was taken.

Roberts filed his own affidavit in opposition to Vaughn's motion for summary judgment. In the affidavit, Roberts outlined the parties' business dealings and contracts that were the subject of the Circuit Court lawsuit. Roberts said that he loaned money to Vaughn in August 2004 and from December 2005 until July 2006. In December 2004, they entered into a lease agreement, understood to last for three years. In September 2004, the parties entered into the Marketing Consultant Agreement, based on a percentage of the profits from Vaughn's law practice. During the course of their business relationship, Roberts also purchased office items and supplies for Vaughn. He contended that Vaughn owed him substantial monies from all of these dealings.

After considering the motion and the record as a whole, the trial court issued an order on April 29, 2008, finding that Vaughn had sufficiently established that the doctrine of *res judicata* precluded Roberts from asserting the claims contained in his complaint. The trial court found that the default judgment entered against Vaughn in the Madison County General Sessions Court was a judgment on the merits and that the claims in the Circuit Court lawsuit were either the same claims asserted in the General Sessions lawsuit or were claims that could have and should have been asserted in the General Sessions lawsuit. The trial court noted that Roberts could have appealed the General Sessions Court's judgment and added the additional claims on appeal. Accordingly, the trial court granted summary judgment in favor of Vaughn. On May 29, 2008, Roberts filed a timely notice of appeal.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, Roberts argues that the trial court erred in holding that the doctrine of *res judicata* barred his Circuit Court lawsuit. He contends that the trial court erred in finding that the default judgment in the Madison County General Sessions Court was a final judgment on the merits, and in finding that the claims and facts in the Circuit Court lawsuit arose from the same cause of action adjudicated in the Madison County General Sessions Court.

Since only questions of law are involved, there is no presumption of correctness regarding the trial court's grant of summary judgment. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citation omitted). Therefore, our review is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party has the burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." *Id.* (citing *Byrd*, 847 S.W.2d at 215 n.5). If the moving party fails to carry its burden, then the motion for summary judgment should be dismissed. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

In this case, summary judgment was granted to Vaughn on the basis of *res judicata*, an affirmative defense. As such, Vaughn has the burden of establishing facts to support each element of the defense. *See NationsBank of Tenn. v. JDRC Corp.*, No. 03A01-9607-CH-00226, 1997 WL 290188, at *2 (citing *Byrd*, 847 S.W.2d at 215 n.5). The burden then shifts to Roberts to demonstrate the existence of a genuine issue of material fact. *Hannan*, 270 S.W.3d at 5 (citing *Byrd*, 847 S.W.2d at 215 ).

### ANALYSIS

The doctrine of *res judicata* serves to bar "a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (citation omitted). The purpose of this doctrine is to "promote finality in litigation in order to conserve judicial resources," *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000), to prevent inconsistent or contradictory judgments, and to prevent inattention and lack of diligence from unduly prolonging the litigation process. *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002); *Shanklin v. UT Med. Group, Inc.*, No. W1999-01982-COA-R3-CV, 2000 WL 33191374, at *1 (Tenn. Ct. App. Nov. 6, 2000). *Res judicata* is not based on a presumption that the prior final judgment was correct or just; instead, it is based on public policy considerations that mandate an end to litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976). To obtain dismissal based on *res judicata*, the party asserting the defense must show that: (1) a court of competent jurisdiction rendered the underlying judgment; (2) the same parties or their privies were involved in both proceedings; (3) both proceedings involved the same cause of action; and (4) the underlying judgment was final and on the merits. *Graham v. Walldorf Prop.*

***Mgmt.***, No. E2008-00837-COA-R3-CV, 2009 WL 723837, at \*4 (Tenn. Ct. App. Mar. 19, 2009) (citation omitted).

Roberts does not dispute that the Madison County General Sessions Court is a court of competent jurisdiction or that the parties involved in the prior General Sessions lawsuit are the same parties in the lawsuit in the Circuit Court below. Rather, Roberts argues that the doctrine of *res judicata* is not applicable because: (1) the default judgment of the Madison County General Sessions Court was not a final judgment on the merits; and (2) the two proceedings did not involve the same cause of action.

## Final Judgment on the Merits

We consider first Roberts' argument that the default judgment against Vaughn in the Madison County General Sessions Court was not a final judgment on the merits. Roberts notes that Vaughn's failure to appear prevented Roberts from conducting discovery to determine facts such as the amount of profits generated by Vaughn's law firm, which would determine the amount Roberts was owed under the Marketing Consultant Agreement. Roberts maintains it was not a judgment on the merits.

A judgment is a final judgment "when it decides and disposes of the *whole* merits of the case leaving nothing for the further judgment of the court." ***Richardson***, 913 S.W.2d at 460 (citation omitted). It is not necessary to have a trial for a judgment to be on the merits; rather, "[i]f the parties had an opportunity to be heard, and there are no technical defects, the judgment 'is on the merits, although there was no actual hearing or argument on the facts of the case.' " ***Hollins v. Covington Pike Chrysler-Plymouth, Inc.***, No. W2002-00492-COA-R3-CV, 2002 WL 31895720, at \*1 (Tenn. Ct. App. Dec. 23, 2002) (quoting 50 C.J.S. *Judgments* § 728 (1997)). A default judgment is a judgment on the merits for the purposes of *res judicata*. ***Mitrano v. Houser***, 240 S.W.3d 854, 861 (Tenn. Ct. App. 2007) (applying New Hampshire law); ***see also Cauff v. Fieger, Fieger, Kenney & Johnson, P.C.***, No. 281442, 2009 WL 187820, at \*2 (Mich. Ct. App. Jan. 27, 2009). In this case, the General Sessions Court entered a default judgment in Roberts' favor, disposing of all issues presented to the court at that time. The order was not appealed. It was clearly a final judgment on the merits for purposes of *res judicata*.

-5-

**Same Cause of Action**

Roberts also contends that *res judicata* is inapplicable because both proceedings did not involve the same cause of action. The cause in the General Sessions lawsuit and the cause in the Circuit Court lawsuit, he argues, did not arise from the same contract, occurrence, or set of facts. He acknowledges similarities in that both suits sought to recover monies from debts that Vaughn owed Roberts. However, he notes that the General Sessions lawsuit concerned Vaughn's debt arising out of only the Marketing Consultant Agreement, while, in contrast, the Circuit Court action sought to recover monies Roberts loaned to Vaughn, rent Vaughn owed Roberts under the oral lease agreement, as well as monies owed under the Marketing Consultant Agreement. In addition, in the Circuit Court lawsuit, Roberts sought the discovery necessary to determine the exact amount Vaughn owed under the Marketing Consultant Agreement.

The Tennessee Supreme Court has acknowledged the difficulty in defining the term "cause of action," and set about doing so for *res judicata* purposes in ***Creech v. Addington***, __ S.W.3d __, No. E2006-01911-SC-R11-CV, 2009 WL 838102, at *12 (Tenn. 2009). In defining "cause of action," the Court rejected the approach previously used, that is, looking at "whether the primary right and duty or wrong are the same in each case." ***Id.*** (quoting ***Gerber v. Holcomb***, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006)). It adopted instead the "transactional" standard set forth in the Second Restatement. The transactional standard provides as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

***Id.*** at *13 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). "Two suits, therefore, shall be deemed the same 'cause of action' for purposes of *res judicata* where they arise out of the same transaction or a series of connected transactions." ***Id.*** at *14.

Under this standard, we determine first whether Roberts' claim against Vaughn under the Marketing Consultant Agreement is precluded under *res judicata*. We then consider whether the remaining claims are precluded as well.

*Marketing Consultant Agreement*

Roberts concedes that the Circuit Court lawsuit includes a claim for breach of the same Marketing Consultant Agreement that was the subject of the General Sessions lawsuit. He notes that his compensation under the Agreement was to be a percentage of the profits from Vaughn's law practice, and states that he did not have any information on monies generated by Vaughn's law firm. Consequently, the General Sessions judgment was based on an estimate of Vaughn's profits. Roberts contends that, in light of Vaughn's failure to appear in the General Sessions lawsuit, the exact amount due him under the Marketing Consultant Agreement "has never been revealed" and he "has not been given the opportunity to discover that amount." He argues, then, that the doctrine

of *res judicata* should not apply to bar his claim on the Marketing Consultant Agreement because he did not have a full and fair opportunity to litigate the claims.

The Tennessee Supreme Court in ***Creech*** observed that there were several circumstances in which the doctrine of *res judicata* should not be applied to bar a second action, even if it arises out of the same transaction as the first lawsuit. It noted specifically the exception on which Roberts seeks to rely, stating that "even where two claims arise out of the same transaction, the second suit is not barred by *res judicata* unless the plaintiffs had the opportunity in the first suit to fully and fairly litigate the particular issue giving rise to the second suit." ***Id.***

It is unclear whether Roberts is asserting that he was not given a full and fair opportunity to litigate his claim because the General Sessions Court has a limited jurisdictional amount and may be less conducive to conducting discovery. Regardless, Roberts chose the forum in which to file the first lawsuit. The plaintiff must assert the claim "initially in the forum with the broadest possible jurisdiction." ***Humphrey v. Tharaldson Enters.***, 95 F.3d 624 (7th Cir. 1996) (citation omitted). "The plaintiff, having voluntarily brought his action in a court which can grant him only limited relief, cannot insist upon maintaining another action on the claim." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. g (1982).

In the alternative, Roberts may be arguing that he did not have a full and fair opportunity to litigate the claim because Vaughn failed to appear in the first action. This likewise cannot be used as a shield against the application of the doctrine of *res judicata*. When Roberts realized that Vaughn was not going to appear for the General Sessions lawsuit, Roberts had a choice. He could choose to non-suit the case and re-file in Circuit Court, or he could choose to go forward and take a default judgment. He chose a default judgment. Having chosen to take a default judgment, if Roberts believed that the amount of the General Sessions default judgment was inadequate, he could have appealed to Circuit Court. *See* T.C.A. § 27-5-108 (2000 & Supp. 2008). He failed to do so, and chose instead to file a new lawsuit in Circuit Court several months later. Roberts simply has not established that he was "prevented" from fully and fairly litigating his claim.[5]

Taking Roberts' argument to its logical conclusion makes the reason for applying the doctrine of *res judicata* to this claim clear. One basis for applying *res judicata* is to prevent inconsistent or contradictory judgments. If Roberts were permitted to go forward with the Circuit Court claim on the Marketing Consultant Agreement and obtain a judgment, he would then have two

---

[5]Roberts cites the following language from ***Young v. Barrow***, 130 S.W.3d 59 (Tenn. Ct. App. 2003), in support of his argument:

> A prior judgment . . . does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the legal rights and relations of the parties.

***Id.*** at 64 (citations omitted). However, Roberts points to nothing in the record indicating that any facts have changed or that new facts have come to light since the entry of the General Sessions Court judgment.

judgments against Vaughn on the same contract. Is he permitted to choose to execute on the larger of the two judgments? Can he execute on both judgments? If the Circuit Court claim were dismissed on the merits, could Roberts then go back and enforce the General Sessions judgment?

Clearly the doctrine of *res judicata* should be applied to bar Roberts' Circuit Court claim based on the September 2004 Marketing Consultant Agreement. The trial court's grant of summary judgment is affirmed as to the Circuit Court claims arising out of the Marketing Consultant Agreement.

### *Remaining Claims*

We now consider whether the doctrine of *res judicata* should be applied to bar the remainder of Roberts' claims. Roberts' remaining claims do not arise out of the Marketing Consultant Agreement. Rather, they arise out of the other contracts and business dealings between the same two parties during the time frame in which the Marketing Consultant Agreement was in force. These claims were, of course, not litigated in Roberts' General Sessions lawsuit against Vaughn. Nonetheless, the doctrine of *res judicata* can apply to bar a second suit on matters that "*could have been* litigated in the former suit." **Richardson**, 913 S.W.2d at 459 (emphasis added).

A prior judgment "does not preclude everything that might have been disputed between the parties, but only matters within a certain sphere." 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4406 (2009). The preclusive scope of the prior judgment depends on defining the breadth of the cause of action in the first lawsuit. *Id.* "The process of defining the . . . cause of action is thus aimed at defining the matters that both might and *should* have been advanced in the first litigation." *Id.*

Because the Tennessee Supreme Court in *Creech* adopted the federal "transactional" standard for determining the breadth of a "cause of action" for *res judicata* purposes, we must determine whether these remaining claims were "part of the transaction, or series of connected transactions, out of which [Roberts' General Sessions] action arose." *Creech*, 2009 WL 838102 at *13 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). Under the transactional approach adopted in *Creech*, " 'the concept of a transaction is . . . used in the broad sense,' and 'connotes a natural grouping or common nucleus of operative facts.' " *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1982)). The Restatement describes the transactional standard as follows:

> What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982). The Court noted that the term "transaction" for the purposes of *res judicata* "is intended to be analogous to the phrase 'transaction or occurrence' as used in the Federal Rules of Civil Procedure." *Creech*, 2009 WL 838102, at *13 (citing Fed. R. Civ. P. 13(a)(1) (referring to "transaction or occurrence" as used in the federal rule on compulsory

counterclaims); Fed. R. Civ. P. 15(c)(1)(B) (referring to "transaction or occurrence" as used in the federal rule on relation back of an amendment to a pleading)). Therefore, we look to federal case law for guidance.

The Sixth Circuit applies a "logical relationship" test to determine whether claims arise out of the same "transaction or occurrence" as the phrase is used in the federal rule on compulsory counterclaims. *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991) (determining whether a counterclaim was compulsory under Fed. R. Civ. P. 13(a)). Under this approach, claims arise out of the same transaction or occurrence if "the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593 (1926)).

In *Suddarth v. Household Commercial Fin. Servs., Inc.*, No. M2004-01664-COA-R3-CV, 2006 WL 334031 (Tenn. Ct. App. Feb. 13, 2006), the Middle Section of the Court of Appeals looked at the phrase "transaction or occurrence" in addressing whether certain claims were compulsory counterclaims under the Federal Rules of Civil Procedure. In that case, the Suddarths were principals of American National Home Mortgage, Inc. ("American National"). *Id.* at *1. American National had entered into a credit agreement with Household Commercial Financial Services, Inc. ("Household"). *Id.* at *3. The Suddarths entered into a guaranty agreement in favor of Household, making the Suddarths personally liable to Household in the event that American National defaulted on the credit agreement. *Id.* After American National defaulted on the loans and went out of business, Household sued the Suddarths in federal district court on the guaranty agreement for the deficiency owed by American National. *Id.* In the original action in federal court, Household obtained summary judgment against the Suddarths on the guaranty agreement. This was not appealed. *Id.* at *1. Three months later, the Suddarths filed a lawsuit against Household and two individual defendants in Davidson County Circuit Court, alleging fraud, fraud in the inducement, and civil conspiracy arising out of the same guaranty and credit agreements at issue in the action in federal court. *Id.* at *2. Household filed a motion for summary judgement, alleging that the Suddarths' claims were barred by, among other things, Federal Rule of Civil Procedure 13(a) regarding compulsory counterclaims. *Id.* The trial court granted the motion. *Id.* The Suddarths appealed, arguing that their fraud and conspiracy claims were not compulsory counterclaims that should have been filed in the federal lawsuit.

The Court of Appeals applied the "logical relationship" test from *Sanders* to determine whether the claims that the Suddarths attempted to assert were compulsory counterclaims. *Id.* at *3. The Court made the following observation on the relationship between the two actions:

> It is undisputed the former action arose out of the same business relationship between the Suddarths and Household at issue in the present action, and specifically out of the guaranty agreement sued on in the former action. Because both the first suit and the second suit arose out of the same transaction or occurrence, the guaranty agreement between the Suddarths and Household, we find the two actions are logically related.

*Id.* at *4. Likewise, to determine whether claims in a second lawsuit arise out of a "series of connected transactions" in relation to claims subject to a prior judgment, we look at whether all are

part of "a series of logically related transactions." ***Abraham v. Volkswagen of Am., Inc.***, 795 F.2d 238, 251 (2nd Cir. 1986) (determining whether Fed. R. Civ. P. 20(a) regarding permissive joinder of parties was satisfied).

In the case at bar, to determine whether the claim asserted in the original General Sessions action and those asserted in the later Circuit Court action constitute the same cause of action for *res judicata* purposes, we examine whether they arise out of the same transaction or series of connected transactions. ***Creech***, 2009 WL 838102, at *14. In the General Sessions action, Roberts sued to collect money that Vaughn allegedly owed him under the Marketing Consultant Agreement. In the Circuit Court action, Roberts sought to collect money that Vaughn allegedly owed him for a series of loans, for unpaid rent under an oral lease agreement, for proceeds from a refund check allegedly received by Vaughn for advertising paid for by Roberts, for supplies Roberts purchased for Vaughn's law firm, and for monies allegedly owed by Vaughn under the Marketing Consultant Agreement.

In his affidavit in support of the motion for summary judgment, Vaughn states that both actions "regarded the same facts and business relationship between the parties . . . which is the issue of the [Marketing Consultant Agreement]." His affidavit includes no facts to support this conclusory statement. The question of whether claims in a second lawsuit are precluded under the doctrine of *res judicata* is determined "on a case-by-case basis, with sensitivity to the facts of each proceeding." ***Id***. Vaughn cites no facts indicating that all of the matters in the General Sessions lawsuit and the subsequent Circuit Court lawsuit arise out of a "common nucleus of operative facts" or "are related in time, space, origin or motivation" or whether they would all "form a convenient trial unit." ***Id.*** at *13; RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982).

Interestingly, Roberts' affidavit submitted in opposition to Vaughn's summary judgment motion, appears to bolster Vaughn's defense of *res judicata*. Roberts' affidavit indicates that all of the matters in controversy arose out of the parties' overall business relationship, roughly correlating with the time period in which the Marketing Consultant Agreement was in force. Roberts gives no reason for not litigating all of these claims at the time he filed the General Sessions lawsuit; he gives no indication that these additional claims were not then known to him, and does not refer to anything that would have prevented him from litigating all of the claims against Vaughn at that time. ***See Index Fund, Inc. v. Hagopian***, 677 F. Supp. 710, 716 (S.D.N.Y. 1987) (claim preclusion applied to a series of securities transactions).

Nevertheless, as noted above, Vaughn had the burden of establishing facts showing that the doctrine of *res judicata* should be applied to bar Roberts' Circuit Court lawsuit. The conclusory statement in his affidavit is insufficient to establish that the matters in the Circuit Court lawsuit (except for those involving the Marketing Consultant Agreement) are part of the same transaction or series of connected transactions as the General Sessions judgment. ***See Blanchard v. Kellum***, 975 S.W.2d 522, 525 (Tenn. 1998). Unlike in ***Suddarth***, where it was clear that the claims in the second action arose out of the guaranty and credit agreements that were at issue in the original action, in the present case, it is not clear how the Marketing Consultant Agreement is logically related to the other debts that Roberts sought to collect in the Circuit Court action because Vaughn failed to explain the relationship between them. ***See Sanders***, 936 F.2d at 277; ***Suddarth***, 2006 WL 334031, at *4. Thus, Vaughn failed to carry his burden establishing the affirmative defense of *res judicata* as to Roberts'

claims for monies allegedly owed him for the series of loans made by Roberts to Vaughn, for unpaid rent under the oral lease agreement, for the supplies purchased by Roberts, or for the proceeds from the refund check allegedly received by Vaughn for advertising purchased by Roberts on Vaughn's behalf. Therefore, the trial court's grant of summary judgment as to those claims must be reversed.

## CONCLUSION

Accordingly, the grant of summary judgment in favor of Vaughn is affirmed as to the claims arising out of the parties' Marketing Consultant Agreement. As to all remaining claims, the grant of summary judgment is reversed.

The decision of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the Appellee, William D. Vaughn, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE