FRAYER SEED, INC., APPELLANT, *v.* CENTURY 21 FERTILIZER AND FARM CHEMICALS, INC. ET AL., APPELLEES.

(No. 9-85-26—Decided June 28, 1988.)

*Sheppard & Bale* and *Alan W. Sheppard; Loveland & Brosius* and *William L. Loveland,* for appellant.

*Gamble & Hartshorn* and *Kenneth A. Gamble,* for appellees Century 21 Fertilizer and Farm Chemicals, Inc., W. Timothy Sharrock and Connie Sharrock.

*Knepper, White, Arter & Hadden* and *Nick V. Cavalieri,* for appellee Bank One of Columbus, N.A.

*Robert E. Griffin,* for appellee Mid-Ohio Chemical Company, Inc.

MILLER, J. This is an appeal by plaintiff, Frayer Seed, Inc. ("Frayer"), from a judgment of the Court of Common Pleas of Marion County granting summary judgment for all defendants and dismissing plaintiff's complaint.

Frayer filed its original complaint naming as defendants Century 21 Fertilizer and Farm Chemicals, Inc. ("Century 21"), Bank One of Columbus, N.A. ("Bank One"), and Mid-Ohio Chemical Company, Inc. ("Mid-Ohio"). The complaint was later amended to include as defendants Sharrock Elevator, Inc., W. Timothy Sharrock, and his wife, Connie Sharrock.

Century 21 was a wholly owned subsidiary of Sharrock Elevator, Inc., and W. Timothy Sharrock was the sole shareholder of Sharrock Elevator, Inc.

Bank One was the principal secured lender to Sharrock Elevator, Inc., and to Century 21, having been such for some time prior to 1983.

On September 21, 1983, Frayer entered into two contracts with Century 21 for the sale of twenty thousand bushels of seed beans with payment to be made on May 10, 1984.

In December 1983, seed beans of the value of $115,974.20 were delivered by Frayer to Century 21 and, on March 12, 1984, additional seed beans of a value of $2,100 were delivered.

The duly recorded security agree-

ments held by Bank One provided that the collateral securing its loans to Sharrock Elevator, Inc. consisted of "all goods, equipment, machinery, furnishings, and other personal property, all inventory, merchandise, new materials, work in process and supplies, all accounts, general intangibles, chattel papers, instruments, and other forms of obligations and receivables."

On March 12, 1984, Bank One demanded payment on its notes and, on March 16, 1984, Sharrock Elevator, Inc. and Century 21 agreed to a voluntary repossession of the assets of Century 21 by Bank One.

Frayer contends that its representative called Richard Seitz at Bank One on September 22, 1983 and again called someone at Bank One during January 1984 to inquire whether there were any problems with Century 21's credit and was assured on both occasions that "Century 21 is in good standing."

Immediately after the repossession Bank One sold the assets of Century 21 to Mid-Ohio. The repossession and sale to Mid-Ohio included the seed beans acquired from Frayer as a part of the inventory of Century 21.

Frayer filed its complaint setting forth several claims for relief, including negligent and/or false representations of Century 21's financial condition by Bank One, civil conspiracy, anticipatory breach of contract, violation of the Bulk Sales Act, conversion of property, a right to reclaim, and a claim to pierce the corporate veil of Sharrock Elevators, Inc.

After further pleadings were filed and substantial discovery was had the trial court granted summary judgment for all defendants and dismissed Frayer's complaint.

Frayer appeals from the trial court's judgment, setting forth eight assignments of error.

* * *[1]

We will consider the assignments of error in a slightly different order than that set forth in appellant's brief.

Assignment of Error Number Two

"The trial court committed prejudicial error by holding that plaintiff failed to state a claim against Bank One for fraud or negligence in making [an] inaccurate credit report where numerous issues of fact had to be decided in order to make such a holding."

Frayer contends that two calls were made to Bank One for the purpose of determining the financial soundness of Century 21 — the first on September 22, 1983 and the second in January 1984.

The contract between Frayer and Century 21 was entered into prior to the first call. Construing the evidence most strongly in favor of Frayer, there can be no issue of fact as to Frayer relying on the later representations to enter the contract.

The evidence properly before the trial court on the motions for summary judgment indicates that Bank One first learned of any financial difficulty concerning Century 21 in February 1984, when W. Timothy Sharrock notified Bank One of the problem. An immediate audit was taken and, on March 9, 1984, a copy of that audit revealed the losses.

There was thus no evidence before the trial court on the motion for summary judgment which would indicate an issue of fact as to Bank One having any knowledge of Century 21's problems either in September 1983, or January 1984, and of any fraud or negligence in making an inaccurate report to Frayer.

The second assignment of error is not well-taken.

---

[1] The text of the opinion as it appears herein was abridged by Judge Miller.

### Assignment of Error Number Three

"The trial court erred by finding that, upon the evidence before it, plaintiff had failed to state a claim under Chapter 1336 of the Ohio Revised Code's Fraudulent Conveyance Act."

As relates to fraudulent conveyance the trial court stated:

"* * * The plaintiff focuses on the voluntary repossession and sale of the assets of Century 21 as being a fraudulent conveyance by prejudicing the unsecured creditors of Century 21. However, plaintiff has presented no evidence whatsoever that there was a scheme or conspiracy that was in violation of the provisions of the Uniform Commercial Code. * * *"

R.C. 1336.06 provides:

"Every conveyance made and every obligation incurred without fair consideration, when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

R.C. 1336.07 provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors."

We conclude, as did the trial court, that there is no evidence of actual intent to defraud any of the creditors of Century 21.

The only evidence contained in the record that a transfer was made without fair consideration is contained in the affidavit of Kenneth Frayer. That evidence is as follows:

"In my opinion the $1,547,471.40 which Mid-Ohio paid for the assets of Century 21 was far below the real value of Century 21. I do not believe Bank One obtained fair consideration for the assets of Century 21 from Mid-Ohio."

Civ. R. 56(E) provides as pertinent:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *"

Evid. R. 701 states:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

We find nothing in the evidentiary items properly before the trial court to indicate that Frayer's opinion is rationally based upon his perception as there is no evidence that he knew the extent of the assets or was acquainted with their value.

His affidavit testimony was not then helpful to a determination of the fact in issue, i.e., the value which would constitute a fair consideration for the assets of Century 21.

The third assignment of error is without merit.

### Assignment of Error Number Four

"The trial court committed prejudicial error by finding that Chapter 1306 of the Ohio Revised Code, Ohio's Bulk Sales Act, did not apply to defendant's transfer and conveyance of the assets and business of Century 21 Fertilizer & Farm Chemical, Inc."

R.C. 1306.01(C) provides:

"The enterprises subject to sections 1306.01 to 1306.09 of the Revised Code, are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell, or whose principal business is a restaurant or other food-service establishment."

R.C. 1306.02 provides in pertinent part:

"The following transfers are not subject to sections 1306.01 to 1306.09, inclusive, of the Revised Code:

"* * *

"(C) Transfers in settlement or realization of a lien or security interest [.]"

It thus is explicitly provided by this statute that the transfer from Century 21 to Bank One was not subject to the "Bulk Sales Act."

The subsequent transfer or sale to Mid-Ohio by Bank One was not subject to the "Bulk Sales Act" as Bank One was not an enterprise "whose principal business is the sale of merchandise from stock."

We thus conclude that assignment of error number four is not well-taken.

Assignment of Error Number Five

"The trial court committed prejudicial error by holding that the mere fact that Bank One held a security interest immunized the bank and its transferees from liability for failing to comply with the requirements of Chapter 1309 of the Ohio Revised Code, also known as Article 9 of the Uniform Commercial Code."

R.C. 1309.46 (UCC 9-503) states as pertinent:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * *"

R.C. 1309.47 (UCC 9-504) states as pertinent:

"(A) A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to sections 1302.01 to 1302.98 of the Revised Code. * * *

"* * *

"(C) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or. is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

"* * *"

The Official Comment to UCC 9-504 (this section) states at paragraph one:

"* * * Although public sale is recognized, it is hoped that private sale will be encouraged where, as is frequently the case, private sale through commercial channels will result in higher realization on collateral for the benefit of all parties. The only restric-

tion placed on the secured party's method of disposition is that it must be commercially reasonable. In this respect this section follows the provisions of the section on resale by a seller following a buyer's rejection of goods (Section 2-706 [R.C. 1302.80]). Subsection (1) [(A)] does not restrict disposition to sale: the collateral may be sold, leased, or otherwise disposed of — subject of course to the general requirement of Subsection (2) [(B)] that all aspects of the dispositions be 'commercially reasonable'. Section 9-507(2) [R.C. 1309.50(B)] states some tests as to what is 'commercially reasonable'."

Official Comment 5 to the same section states:
"* * *

"The secured party must also (except for consumer goods) give notice to any other secured parties who have in writing given notice of a claim of an interest in the collateral. This latter notice must be given before the debtor renounces his rights or before the secured party gives his notification to the debtor. Compare Section 9-505(2) [R.C. 1309.48(B)]. Except for the requirement of notification there is no statutory period during which the collateral must be held before disposition. * * *"

Thus it is only required that notice of sale be given to other secured creditors who have in writing given notice of a claim of an interest in the collateral.

Frayer was not a secured creditor and not entitled to any notice.

Official Comment 6 to UCC 9-504 (R.C. 1309.47) states: ¯
"* * * The failure to prescribe a statutory period during which disposition must be made is in line with the policy adopted in this Article [R.C. Chapter 1309] to encourage disposition by private sale through regular commercial channels. It may, for example, be wise not to dispose of goods when the market has collapsed, or to sell a large inventory in parcels over a period of time instead of in bulk. Note, however, that under Subsection (3) [(C)] every aspect of the sale or other disposition of the collateral must be commercially reasonable; this specifically includes methods, manner, time place and terms. See Section 9-507(2) [R.C. 1309.50(B)]. * * *"

R.C. 1309.50(B) (UCC 9-507[2]) states as pertinent:
"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sale also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable."

In this assignment of error Frayer argues that the sale was not commercially reasonable because unsecured creditors were cut off from recovering losses, that the simultaneous disposition and sale of Century 21 lacked good faith, that Bank One repossessed items in which it did not have a security in-

terest, and that Mid-Ohio paid less than the fair market value for the collateral.

Pursuant to the guidelines of commercial reasonableness (R.C. 1309.50 [B]) the items of which Frayer complains do not determine the commercial reasonableness or unreasonableness of a transaction. Secured creditors are normally satisfied before unsecured creditors, and unsecured creditors may receive nothing if the claims of the secured creditors exhaust the money available from the sale of the assets. Frayer, an unsecured creditor, therefore cannot argue commercial unreasonableness merely because he was not paid.

Official Comment 6 to UCC 9-504 (R.C. 1309.47) states that no statutory time period exists in which a repossession and sale are required to be brought. The mere fact that the repossession and sale of Century 21 were performed at the same time does not violate the commercial reasonableness requirement of R.C. Chapter 1309 (Article 9 of the UCC).

The items which Bank One could seize are enumerated in the financing statements of Bank One and include "all goods, equipment, machinery, furnishings and other personal property, all inventory, merchandise, raw materials, work in process and supplies, all accounts, general intangibles, chattel paper, instruments, and other forms of obligations and receivables," which are broad provisions which would entitle Bank One to repossess Century 21 in its entirety.

The fact that a better price might have been obtained at a different time if the goods had been sold in a different manner does not, standing alone, establish commercial unreasonableness. See R.C. 1309.50(B).

We conclude that, based on the evidentiary items before the trial court on the motion for summary judgment, no genuine issue of fact existed as to the commercial reasonableness of the transactions.

The fifth assignment of error is not well-taken.

### Assignment of Error Number Six

"The trial court committed prejudicial error by holding that Mid-Ohio was a bona-fide purchaser not subject to plaintiff's right of reclamation where Mid-Ohio Chemical Company had notice of claims of unpaid inventory suppliers and a demand for reclamation had been made."

In its opinion, the trial court stated at page 3:

"There is no dispute that beans were delivered by plaintiff to Century 21 on March 12, 1984, when Century 21 was insolvent and that plaintiff gave notice of reclamation within 10 days thereafter. However R.C. 1302.76(C) provides that a seller's right to reclaim is subject to the rights of a good faith purchaser under R.C. 1302.44. Mid-Ohio was a good faith purchaser even though it knew of the insolvency of Century 21 on March 12, 1984."

The trial court held Mid-Ohio to be a good faith purchaser and not a bona fide purchaser.

R.C. 1302.44 (UCC 2-403) deals with good faith purchasers of goods and provides in part:

"(A) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. * * *"

Official Comment 3 to UCC 2-403 (R.C. 1302.44) states in part:

"The definition of 'buyer in ordinary course of business' (Section 1-201 [R.C. 1301.01] is effective here and preserves the essence of the healthy limitations engrafted by the case-law on the older statutes. * * *"

R.C. 1301.01(I) defines a "buyer in the ordinary course of business" as follows:

" 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * * ."

The deposition of Ronald B. Rivers, president of Mid-Ohio, stated at page 15:

"Q Did the inventory that you took of Century 21 include any of its liabilities?

"A No, sir, with the exception of any prepayment money that they have taken from farmers, we would honor.

"Q Did you know when you took the inventory who had prepaid?

"A We had a list of the prepayments from farmers, yes.

"Q Did you also have a list of any unsecured creditors of Century 21?

"A No.

"Q Did you assume that Century 21 owned all of the property that it had which was not subject to any mortgage or financing statement free and clear?

"A I assume we bought all the assets from the bank, free and clear."

The deposition continues at page 18:

"Q At the time that the closing took place, did you, as the president of Mid-Ohio, and the person signing the documents discuss with anyone from Bank One, whether or not any unsecured creditors of Century 21 would be paid?

"A No.

"Q Were any provisions made for paying any of the unsecured creditors of Century 21?

"A No.

"Q Other than Bank One, and other than prepaid farmers, were any provisions made for paying any of the creditors of Century 21?

"A No.
"* * *"

This testimony, unrefuted, discloses no knowledge on the part of Mid-Ohio that would preclude its standing as a good faith purchaser in the ordinary course of business.

We conclude that where Bank One as a secured creditor had repossessed the assets of Century 21 pursuant to its security agreements, and Mid-Ohio had bought from Bank One under the circumstances here, no genuine issue of fact existed as to the status of Mid-Ohio as a good faith purchaser and the trial court correctly so held.

We find that the sixth assignment of error is not well-taken.

Assignment of Error Number Seven

"The trial court erred by failing to find that the question of whether all defendants engaged in an unlawful conspiracy to sacrifice Century 21 Fertilizer & Farm Chemical, Inc. for their own benefit and at the expense of plaintiff and others was a jury question."

In its opinion the trial court stated at page 2:

"* * * The Court has searched through the evidentiary matter offered in this case and can find no evidence of impropriety on the part of any party defendant. The plaintiff focuses on the voluntary repossession and sale of the assets of Century 21 as being a fraudulent conveyance by prejudicing the unsecured creditors of Century 21. However plaintiff has presented no evidence whatsoever that there was a scheme or conspiracy that was in violation of the provisions of the Uniform Commercial Code. The fact that the unsecured creditors were not paid raises no inference of fraud or a violation of the code. Likewise the fact that the parties to the repossession and the

subsequent sale of the assets of Century 21 were negotiated behind closed doors raises no inference that a conspiracy was taking place."

After examining the evidentiary items before the trial court, we come to the same conclusion. There is no evidence of a conspiracy.

Parties cannot conspire to do that which they are legally entitled to do. *Taylor* v. *Foremost-McKesson, Inc.* (C.A. 5, 1981), 656 F. 2d 1029. Bank One had by the terms of the security agreements the right to repossess and sell the inventory and other assets of Century 21 pursuant to R.C. 1309.46 and 1309.47. Its action raises no genuine issue of fact as to conspiracy and the seventh assignment of error is therefore not well-taken.

Assignment of Error Number Eight

"The trial court erred by failing to allow plaintiff to amend its complaint to add a new cause of action and to add a new defendant in violation of the letter and the spirit of Rule 15 of the Ohio Rules of Civil Procedure."

Civ. R. 15(A) provides as pertinent:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * *"

Frayer filed its complaint on March 27, 1984, and its first amended complaint on October 5, 1984. Frayer filed its motion for leave to file a second amended complaint on June 5, 1985 for the stated purposes of adding another defendant, Charles Miles, and of clarifying and expanding allegations of fraudulent conveyances. From the time of filing the original petition there had been much discovery including, but not limited to depositions, interrogatories, and requests for documents.

At the hearing on the motion for summary judgment the trial court heard argument regarding the proposed second amended complaint and, in its journal entry of July 29, 1985, denied appellant's motion.

In *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161, 175, 63 O.O. 2d 262, 269, 297 N.E. 2d 113, 122, the Supreme Court stated, "* * * the grant or denial of leave to amend a pleading is discretionary * * *" with the trial court.

As amendments are to be freely granted so that cases can be decided on their merits, ample reason for refusal to grant a motion to amend should be shown, and actual prejudice to an opposing party is the most important factor to be considered in the granting or withholding of leave to amend. See McCormac, Ohio Civil Rules Practice (1970) 197, Section 9.04. See, also, *John Sausser Steel Co.* v. *Metcalf* (Sept. 22, 1981), Hancock App. No. 5-80-33, unreported. Another factor to be considered by the trial court is the timeliness of the proposed amendment. Delay in itself should not operate to preclude an amendment. McCormac, *supra,* at 202, Section 9.07.

The trial court specifically found "that the motion of the plaintiff to file a second amended complaint so as to add another party defendant is untimely and would not present any new evidence establishing the existence of a genuine issue of fact. * * *"

In *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87, 19 OBR 123, 126-127, 482 N.E. 2d 1248, 1252,

the Supreme Court in a *per curiam* opinion stated:

"* * * We have repeatedly held that '[t]he term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148]; *Conner* v. *Conner* (1959), 170 Ohio St. 85 [9 O.O. 2d 480]; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372 [2 O.O. 3d 484].' *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157-158 [16 O.O. 3d 169]; *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219.

" ' "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *" ' *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 222."

We find no such attitude on the part of the trial court and find no abuse of discretion in its overruling appellant's motion to amend its complaint.

Appellant's eight assignment of error is not well-taken.

Assignment of Error Number One

"The trial court erred in granting defendants-appellees' motions for summary judgment where th[e] court expressly and impliedly decided numerous contested issues of material fact, thus the trial court prejudicially failed to apply the standards of Rule 56 of the Ohio Rules of Civil Procedure by not construing the evidence most favorably to the appellant."

We have carefully examined the evidentiary items properly before the trial court on defendants' motions for summary judgment and find based thereon that no 'genuine issues of material fact existed and that defendants were entitled to judgment as a matter of law.

The first assignment of error is overruled.

Finding no error of the trial court prejudicial to plaintiff as assigned, and argued, we affirm the trial court's judgment.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.