[Cite as *Wells Fargo Bank, N.A. v. Lee*, 2014-Ohio-4514.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Wells Fargo Bank, N.A., etc.         Court of Appeals No. WD-14-005

       Appellee                       Trial Court No. 2012CV0502

v.

Janet M. Lee, et al.                **DECISION AND JUDGMENT**

       Appellants                Decided:  October 10, 2014

* * * * *

Matthew J. Richardson, for appellee.

George R. Smith, Jr., for appellants.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellants, Janet M. Lee and Raymond L. Lee, appeal from the November 27 and December 30, 2013 judgments of the Wood County Court of Common Pleas granting summary judgment to Wells Fargo and denying several motions of the Lees for summary judgment, a stay, leave to amend their answer and counterclaim, and to compel discovery.  For the reasons which follow, we affirm.

**{¶ 2}** The following evidence was submitted in connection with the motions for summary judgment. In 2006, the Lees were solicited by brokers of NGRM, LLC, Inc., d/b/a Stonefire Mortgage, to refinance their mortgage to lower the mortgage payment, eliminate their private mortgage insurance, and consolidate $20,000 of credit card debt. At the time, the Lees had a $156,750 loan from Sky Bank with an interest rate of 5.875 percent. Appellants signed several documents without reading them believing that the documents were standard documents needed to enable a mortgage broker to negotiate a loan for them. The Lees attested that they were never given copies of these documents.

**{¶ 3}** At some point prior to closing, the Lees had changed their mind and contacted the Stonefire employees; but, the Lees were reassured that the mortgage would be in their best interest. The Lees believed that they were getting a $160,000 loan with $6,000 in cash to pay off some of their credit card debt and that the mortgage payment would be $250 less per month than they were currently paying. When they were shown an amortization schedule and questioned the later increase in the monthly payment, the Lees were reassured that they could refinance the loan in 36 months.

**{¶ 4}** At the closing, the Lees felt rushed, were not permitted to read the documents, did not receive any copies of the documents, and were again reassured that Stonefire was waiving its fee. They were also informed that they would not be receiving $6,000 in cash because the appraisal was not high enough. Because the Lees followed the advice of Stonefire, they had not made their December mortgage payment and they felt compelled to complete the closing to avoid having to make two mortgage payments

2.

at one time. The Lees did not learn until 2008 that they were still paying private mortgage insurance; the lender was Countrywide Bank; Countrywide Bank had paid money to Stonefire; and that the yield spread premium affected the terms of the loan.

{¶ 5} Janet M. Lee executed a promissory note on December 20, 2006, in the principal amount of $162,000 to Countrywide Bank, N.A., the lender, with a variable interest rate of 9.25 percent with a ceiling rate of 10.825 percent. The Lees executed a mortgage on the same date securing the promissory note. Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as a nominee for the lender and was the mortgagee. The Lees allege that as a result of the refinancing, they obtained a mortgage which was a variable rate 5 percent higher than their prior fixed rate loan and a loan which did not consolidate their debt. Closing costs were approximately $5,000. The new loan decreased the Lees' monthly mortgage payment only for the first 12 months.

{¶ 6} The note was transferred to Countrywide Home Loans, Inc. The note was later made payable to bearer by Countrywide Home Loans, Inc.

{¶ 7} The mortgage was assigned by MERS on October 6, 2011, to Bank of America, N.A., successor by merger to BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP. On December 1, 2011, Janet Lee was notified that the loan had been transferred from Bank of America to Select Portfolio Servicing, Inc. On July 5, 2012, Bank of America, N.A. by Select Portfolio Servicing, Inc., assigned the mortgage to Wells Fargo Bank, N.A. as trustee, on behalf of the holders of Harbor View Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series

3.

2007-1 (hereinafter "Wells Fargo"). The Pooling and Servicing Agreement ("PSA") was dated February 1, 2007, and the closing date for loans to be included or withdrawn was March 9, 2007. PSA, Article I, Section 1.01.

{¶ 8} On February 27, 2009, the Lees filed suit in the Wood County Court of Common Pleas seeking rescission of the loan against the lender, Countrywide Home Loans, Inc.; its parent company, Bank of America, N.A.; the mortgage broker, Stonefire Mortgage; and two of the broker's employees. This action was removed to the U.S. District Court for the Northern District of Ohio, Western Division on April 2, 2009. *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir.2012). The Lees alleged three claims against Countrywide: First, a common law claim of fraud asserting that Countrywide defrauded them by concealing an agreement to pay a Yield-Spread Premium (an enhanced finders' fee paid by the lender to the broker). Second, a civil conspiracy claim that Countrywide conspired with Stonefire to further the breach of the fiduciary duties of Stonefire and its acts of fraud. Third, the Lees alleged a claim of a violation of the Truth-in-Lending Act because they did not receive two copies of the Notice of Right to Cancel. The Lees sought to rescind the mortgage for the violation. On April 13, 2010, summary judgment was granted to Countrywide on all three claims. *Lee v. Countrywide Home Loans, Inc.*, N.D.Ohio, Western Division No. 3:09 CV 766, 2010 WL 1487131, *7 (Apr. 13, 2010). Although the Lees had stopped making payments on the note as of July 1, 2009, neither Countrywide nor Bank of America filed a counterclaim for foreclosure.

4.

**{¶ 9}** The Lees subsequently settled their claims with Stonefire after the Lees appealed the decision of the federal district court. On August 13, 2012, the federal district court decision was reversed in part on appeal. *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 445 (6th Cir.2012). The court found that the Lees had presented sufficient evidence of a civil conspiracy by Countrywide, *id.* at 449, but affirmed the dismissal of the common law fraud claim and the claim of a violation of the Truth-in-Lending Act. *Id.* at 452.

**{¶ 10}** Meanwhile, on March 30, 2012, Select Portfolio Servicing, Inc. (holder of the mortgage as of December 1, 2011) sent a demand letter to the Janet Lee notifying her of the default as of August 1, 2009, and right to cure the default. On July 12, 2013, Wells Fargo, c/o Select Portfolio Servicing, Inc., brought the current foreclosure action against Janet M. Lee, Raymond L. Lee, Jr., and the Wood County Treasurer. Wells Fargo alleged that Janet Lee defaulted on a promissory note secured by a mortgage on the Lees' home. Wells Fargo sought a judgment on the note pursuant to R.C. 1303.31 and asserted a right to foreclose on the mortgage.

**{¶ 11}** The Lees answered the complaint on September 10, 2012, and asserted numerous affirmative defenses. Appellants also asserted counterclaims alleging they were entitled to rescission of the mortgage transaction pursuant to The Truth-in-Lending Act and alleged a common law tort claim for civil conspiracy. The Lees asserted that the Stonefire brokers knew that the Lees could not obtain the loan promised, reduce their interest rate, or consolidate their credit card debt when the brokers misled the Lees into

5.

proceeding with the loan. The Lees further asserted that the broker intentionally concealed and misrepresented the true interest rate on the loan by only advising them of the minimum monthly payment. The Lees also asserted that the brokers never delivered to them the loan documentation required by federal and state law and concealed the broker fees. Finally, the Lees argued that Stonefire and Countrywide conspired to misrepresent and conceal material loan terms from them, including the yield-spread premium. The Lees sought rescission of the loan for failure to deliver two notices of their right to cancel the mortgage as required by federal law.

{¶ 12} Wells Fargo sought to dismiss the counterclaims on grounds that the Lees failed to state a claim, the claims are barred by the applicable statute of limitations, the Lees cannot prove illegal conduct, and the trial court lacked jurisdiction over the claims asserted because the same claims were currently pending in an action filed in federal court.

{¶ 13} In a judgment dated December 26, 2012, the trial court granted the motion to dismiss as to the Truth-in-Lending claims, denied the motion to dismiss as to the civil conspiracy claim, but stayed the proceedings pending resolution of the federal action. The federal action was allegedly dismissed in July 2013, with prejudice, pursuant to a settlement agreement between the parties.

{¶ 14} On September 4, 2013, Wells Fargo moved for summary judgment and the Lees were ordered to respond to the motion by September 19, 2013. Instead, on September 17, 2013, the Lees filed a motion for leave to amend and supplement their

6.

answer and counterclaim in lieu of a response to the motion for summary judgment. They sought to add additional affirmative defenses and a counterclaim for violation of the Fair Debt Collection Practices Act. The Lees asserted in their motion for leave, based on the limited discovery response, they believed that Wells Fargo misrepresented the date, manner, and entity from whom it claims entitlement to enforce the note as a creditor and that Wells Fargo is in fact a debt collector under the Fair Debt Collections Practices Act because the mortgage was assigned to Wells Fargo after Janet Lee defaulted on the loan. The Lees also moved to stay summary judgment on the ground that they needed additional time to obtain evidence because of a discovery dispute. The Lees also asserted in that motion that Wells Fargo's motion for summary judgment failed to address their affirmative defenses and it did not present sufficient evidence to establish its claim.

**{¶ 15}** Wells Fargo opposed the motion for leave on the grounds that it was filed more than one year after the foreclosure proceeding was filed, was filed to cause undue delay, and their claim could not survive a motion to dismiss for failure to state a claim because they did not allege any specific violation of the act. Wells Fargo also opposed staying the summary judgment proceedings arguing that it had already responded to three written discovery requests and produced approximately 500 pages of documents.

**{¶ 16}** Prior to Wells Fargo filing a reply and memorandum in opposition, the court denied the Lees' motions on November 27, 2013, and ordered the Lees to reply to the motion for summary judgment within ten days of the date of that order. The trial court held the claim based on the Fair Debt Collections Practices Act (FDCPA) required

7.

Wells Fargo be a "debt collector" who engaged in false, deceptive, or misleading representations regarding collection of the debt. The court found that the proposed amended counterclaim contained no such allegations. Furthermore, the court found that the Lees' affirmative defense of res judicata lacked merit because foreclosure is not a compulsory counterclaim in an action alleging improper loan origination. The court also found that the challenge to Wells Fargo's standing to foreclose lacked merit because Wells Fargo produced authenticated copies of the note and assignments of mortgage indicating that it had acquired the note and mortgage before the filing of the complaint.

{¶ 17} On December 19, 2013, the Lees filed a memorandum in opposition to the motion for summary judgment and a cross-motion for summary judgment on their affirmative defenses. The Lees asserted that: Wells Fargo's claim is barred by the doctrine of res judicata because it was a compulsory counterclaim in the prior action; the loan transaction was unconscionable and violated public policy; the claim was barred by the doctrine of estoppel and latches; Wells Fargo failed to mitigate its damages by failing to intervene in the prior action; the claim is barred by the equitable doctrine of clean hands and other equitable considerations; there is a genuine issue of material fact concerning Wells Fargo's standing to foreclose; and the Lees are entitled to recoupment of sums due under the note for damages resulting from civil conspiracy.

{¶ 18} Wells Fargo moved on December 23, 2013, for leave to file a reply to their motion for summary judgment and a memorandum in opposition to the cross-motion for

8.

summary judgment. Without ruling on the motion for leave filed by Wells Fargo, the trial court granted summary judgment to Wells Fargo on December 30, 2013.

{¶ 19} In its judgment, the court found that Janet M. Lee had executed the promissory note, she was in default, and the note was secured by a mortgage executed by Janet and Raymond Lee. The court entered summary judgment in favor of Wells Fargo in the amount of $172,244.59, plus interest from July 1, 2009. Unless the sum was paid in full within three days of the date of the entry, the equity of redemption would be foreclosed and the property sold to satisfy the judgment. In a separate judgment of the same date, the court also denied the Lees' motion for reconsideration of the court's November 27, 2013 judgment.

{¶ 20} On January 14, 2014, the Lees moved for relief from judgment pursuant to Civ.R. 60(B)(1) and reconsideration. The Lees filed a notice of appeal from the November 27 and December 30, 2013 judgments on January 27, 2014. The trial court denied appellants' motion for relief and reconsideration on February 26, 2014.

{¶ 21} Appellants sought an appeal from all the November 27 and December 30, 2013 judgments. On appeal, appellants assert the following assignments of error:

Assignment of Error No. 1: THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO WELLS FARGO AND IN DENYING SUMMARY JUDGMENT TO THE LEES.

Assignment of Error No. 2: THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE LEES' MOTIONS FOR LEAVE TO

AMEND AND SUPPLEMENT THEIR ANSWER AND COUNTERCLAIM, STAY SUMMARY JUDGMENT AND COMPEL DISCOVERY.

Assignment of Error No. 3: THE TRIAL COURT LACKED JURISDICTION TO RULE ON THE LEES' 60 B MOTION WHILE THEIR APPEAL OF ITS JUDGMENT WAS PENDING.

{¶ 22} We begin by addressing appellants' second assignment of error. The Lees argue that the trial court abused its discretion when it denied their motion for leave to amend their answer and supplement their counterclaim.

{¶ 23} Civ.R. 15(A) provides that "[l]eave of court shall be freely given when justice so requires." A trial court considers the following factors when determining the motion for leave to amend: whether amendment would result in any prejudice to the opposing party; whether the moving party demonstrated operative facts which support the prima facie elements of the proposed claim; and the timeliness of the motion as it relates to the opposing party's ability to defend the claims. *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illuminating Co.*, 60 Ohio St.3d 120, 573 N.E.2d 622 (1991), syllabus, and *Frayer Seed, Inc. v. Century 21 Fertilizer & Farm Chem., Inc.*, 51 Ohio App.3d 158, 165, 555 N.E.2d 654 (3d Dist.1988). An appellate court will not reverse a trial court's decision on a motion to amend absent an abuse of discretion. *Wilmington Steel* at 122. The term "abuse of discretion" requires that we find more than an error of law or judgment. We must find that the "trial court's attitude is unreasonable, arbitrary, or

unconscionable." *Id*., citing *Huffman v. Hair Surgeon, Inc*., 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 24} To assert a FDCPA violation, the Lees were required to assert that: "(1) [they have] been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Wyant v. Nationstar Mortg., LLC*, W.D.La. No. CIV.A. 14-0422, 2014 WL 3446633, *8 (June 10, 2014), *adopted in part and rejected in part on other grounds* in *Wyant v. Nationstar Mtg., LLC*, W.D.La. No. 14-0422, 2014 WL 4146351, quoting *Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale,* No. 12-706-RLB, 2013 WL 6834381, *4 (M.D.La. Dec. 23, 2013).

{¶ 25} The Lees proposed to assert in their claim that Wells Fargo is a debt collector pursuant to 15 U.S.C. 1692e(6), and that it misrepresented that it was a creditor when it was in fact a debt collector because it was in possession of the note after February 1, 2007, the closing date of the trust.

{¶ 26} 15 U.S.C. 1692a(6) defines "debt collector" as any entity that:

uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the

11.

term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the

liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Based on this provision, the FDCPA does not apply to mortgage assignees and loan servicers unless they are attempting to collect a debt owed which was in default at the time it was assigned or transferred. 15 U.S.C. 1692e(6)(F); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985), *modified on other grounds* by *Perry v. Stewart Title Co.*, 761 F.2d. 237 (5th Cir.1985); and *Richardson v. Rosenberg & Assoc. LLC*, D.Md. No. WDQ-13-0822, 2014 WL 823655, *3 (Feb. 27, 2014). Furthermore, filing a complaint for foreclosure and seeking payment on a promissory note is a debt collection under the FDCPA. *Roban v. Marinosci Law Group*, S.D.Fla. No. 14-60296-Civ-Scola, 2014 WL 3738628, *2 (July 29, 2014).

{¶ 27} Because the mortgage was transferred to Wells Fargo on July 5, 2012, after Janet Lee defaulted on the note on July 1, 2009, the Lees argue that Wells Fargo is a debt collector under the FDCPA.

13.

**{¶ 28}** The Lees further sought to assert that Wells Fargo had actual or constructive knowledge that Countrywide Homes had misrepresented in the federal action between the Lees and Countrywide Homes that Wells Fargo had acquired possession of the note and mortgage on February 1, 2007, in compliance with the PSA. Furthermore, the Lees allege that Wells Fargo falsely represented in discovery that the note was in its or its authorized agent's possession since February 1, 2007. This misrepresentation misled the Lees into believing Wells Fargo was a creditor rather than a debt collector under the FDCPA. The Lees further argue that Wells Fargo was aware of their claims against Countrywide and deliberately concealed its status to avoid having to file a foreclosure counterclaim and lacked standing to bring the action separately because the note was not delivered to the trustee pursuant to the PSA. While we note the discrepancy in the date of the assignment of the mortgage and the trust closing date, the Lees do not indicate the specific sections of the FDCPA that were violated.

**{¶ 29}** The Lees only argue that Wells Fargo lacked standing to bring the foreclosure action. However, whether or not the assignment of the mortgage violated the PSA is irrelevant to the issue of whether Wells Fargo had the right to seek judgment on the note and to foreclosure the mortgage.

**{¶ 30}** Therefore, we conclude that the trial court did not abuse its discretion by denying the Lees' motion to amend their complaint to add this claim. We agree with the trial court that the Lees failed to sufficiently state a claim of a violation of the FDCPA. The Lees' second assignment of error is found not well-taken.

14.

{¶ 31} In their first assignment of error, the Lees argue that the trial court erred by granting summary judgment to Wells Fargo and in denying summary judgment to the Lees.

{¶ 32} Summary judgment is appropriate in a foreclosure action if the plaintiff can present evidence showing:

> 1.) The movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; 2.) if the movant is not the original mortgagee, the chain of assignments and transfers; 3.) all conditions precedent have been met; 4.) the mortgagor is in default; and 5.) the amount of principal and interest due. *U.S. Bank, N.A. v. Coffey*, 6th Dist. No. E-11-026, 2012-Ohio-721, ¶ 26, quoting *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. No. 2010-CA-00291, 2011-Ohio-3202, ¶ 40-45.

{¶ 33} The appellate court reviews the grant of summary judgment under a de novo standard of review. *Doe v. Shaffer,* 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Applying the requirements of Civ.R. 56(C), we uphold summary judgment when it is clear:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is

made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 34} First, the Lees argue on appeal that when they asserted claims against Countrywide in the federal action for common law claim of fraud, civil conspiracy, and a violation of the Consumer Credit Protection Act (known generally as the Truth in Lending Act), 15 U.S.C. 1601 et seq., and sought to rescind the mortgage as a result of the violation of the act, a foreclosure action became a compulsory counterclaim that Countrywide or Wells Fargo should have asserted in the federal action. Because the claim was not added, the Lees argue that the claim is now barred by the doctrine of res judicata.

{¶ 35} Under federal law, a litigant must assert any counterclaim that: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a). The failure to assert a compulsory counterclaim results in the claim being barred under the doctrine of res judicata. *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir.1991).

{¶ 36} In *Maddox v. Kentucky Fin. Co., Inc.*, 736 F.2d 380, 383 (6th Cir.1984), the federal court considered whether a common law debt action was a compulsory counterclaim to an action alleging a violation of the Consumer Credit Protection Act

16.

(Truth in Lending Act). The court, rejecting a literal application of the rule, applied the test developed by the courts:

Is there a logical relationship between the two claims?

Are the issues of fact and law raised by the claim and counterclaim largely the same?

Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?

Would substantially the same evidence support or refute both the claim and the counterclaim? *Id*. at 382.

{¶ 37} The *Maddox* court concluded that the counterclaim in that case was permissive, not compulsory, because while the claims arise out of the same transaction, they are not logically related as they present different legal, factual, and evidentiary issues. *Id*. at 383. The court found that the collectability of the debt was not "logically related" to the issue of whether a creditor violated the Consumer Credit Protection Act (Truth in Lending Act) even though both claims arose out of the same transaction. *Id*. at 383.

{¶ 38} However, in *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F.2d 273 (6th Cir.1991), the Sixth Circuit, applying the "logical relationship" test, found that the right of the creditor to enforce a personal guarantee was logically related to the debtor's claim that the creditor had agreed to refrain from immediate action to collect upon the notes she owed. *Id*. at 277.

17.

{¶ 39} The Lees attempt to argue that the case before us is distinguishable from *Maddox,* because the Lees sued for rescission of the loan and not merely damages for the violation of the act. The Lees also argue that the claims are related because it would have been necessary to determine the amount due and owing on the loan in order to determine the damages they could recover. We disagree.

{¶ 40} Even though the loan could have been rescinded, there was no obligation upon the holder of the note to seek to enforce its rights in the prior lawsuit. The earlier action merely decided whether the Lees had a valid defense to the enforcement of the note and mortgage. The holder of the note is a necessary party to the action in order to preserve its interests in the note and mortgage. Had the Lees been successful and obtained rescission of the mortgage, the holder of the note would not have been able to enforce the note and mortgage. However, the mere fact that a debtor preemptively sought to assert certain claims that would affect later enforcement of a note does not require that the holder must assert a debt collection action at the same time. We conclude that the trial court did not err in finding that the doctrine of res judicata did not bar the claims of Wells Fargo.

{¶ 41} Secondly, the Lees argue that the evidence submitted by Wells Fargo was insufficient to establish that there was no genuine issue of material fact regarding the Lees' affirmative defense that the claim was barred by the doctrine of res judicata.

{¶ 42} In support of their motion for summary judgment, Wells Fargo submitted the affidavit of Zane Barton, a manager at Select Portfolio Servicing, Inc., who attested

18.

that he reviewed the records of Select Portfolio Servicing, Inc. and the records disclosed that the mortgage and note in this case were assigned and transferred to Wells Fargo, the Lees are in default, and Wells Fargo is owed $219,039.83.

{¶ 43} The Lees argued that the affidavit of Zane Barton contains hearsay because he had no knowledge of the business practices of prior servicers of the loan and he did not attach the business records documenting a balance due on the note. However, this argument was waived because the Lees failed to assert it in their memorandum in opposition to the motion for summary judgment. *Wells Fargo Bank, N.A. v. Murphy*, 7th Dist. No. 13 MA 35, 2014-Ohio-2937, ¶ 20. Furthermore, the Lees did not present any evidence to refute that Wells Fargo has standing to assert its claims.

{¶ 44} Third, the Lees argue that the trial court erred in granting summary judgment to Wells Fargo because an option arm note is not a negotiable instrument, and the mere possession of that instrument is insufficient to establish entitlement to enforce it. The Lees argue that there is a question of fact as to whether Bank of America assigned the loan to Wells Fargo after it assigned the loan to the sponsor of the trust as required by the trust. As a result, the Lees argue that Wells Fargo cannot prove that it acquired the note pursuant to the terms of the PSA and in compliance with the New York trust law. Therefore, Wells Fargo cannot establish that it has standing to enforce the note and mortgage.

{¶ 45} While the record does support the Lees' argument that there is a question of fact as to whether Wells Fargo became the holder of the note pursuant to the terms of the

19.

PSA, any noncompliance with the PSA does not create a genuine issue of material fact with regard to Wells Fargo's standing to enforce the note and mortgage when Wells Fargo has presented evidence that it was the holder of the note and mortgage prior to filing its complaint for foreclosure. *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. Franklin No. 13AP-663, 2014-Ohio-2540, ¶ 9, and *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 62. Therefore, we find this argument lacks merit.

{¶ 46} Fourth, the Lees argue that the trial court erred by failing to find that the loan transaction was unconscionable, predatory, and violative of public policy. The trial court denied summary judgment to the Lees without explanation.

{¶ 47} The defense that a contract or contract provision is unenforceable on the ground that it is unconscionable is premised on a finding that a party did not have any meaningful choice when entering into the contract or the contract terms are unreasonably favorable to one party. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 382, 613 N.E.2d 183 (1993). "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *McGlumphy v. Richard T. Kiko Agency, Inc.,* 9th Dist. Summit No. 27043, 2014-Ohio-3479, ¶ 10, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34. Substantive unconscionability is found when the terms are unfair and commercially unreasonable. *Renken Ent. v. Klinck*, 11th Dist. Trumbull No. 2004-T-0084, 2006-Ohio-1444, ¶ 19. Procedural unconscionability is found when the

20.

circumstances surrounding the execution of the contract demonstrate that there was no voluntary meeting of the minds. *Id*. at ¶ 20.

{¶ 48} The Lees argue the facts in this care are similar to those in *Beneficial Mtg. Co. of Ohio v. Leach*, 10th Dist. Franklin No. 01AP-737, 2002-Ohio-2237, ¶ 68 (loan and mortgage found unconscionable, where interest rate unexpectedly increased, and mortgagor forced to sign documents without reading them). The Lees argue that substantive unconscionability was shown by the following facts: (1) the closing costs were $5,000 for the $150,000 loan where no cash was disbursed; (2) their interest rate went from a fixed rate to a higher variable 9.25 percent to 10.875 percent; and (3) their monthly payment was initially $300 higher than the fixed loan and, because they were also persuaded to make the minimum payment option, their monthly payment would jump from $742.02 to $1,567.73 after 41 months into the loan, thereby increasing their monthly payment over $500 higher than under the prior fixed loan.

{¶ 49} The Lees submitted the affidavit of Dennis Byrne of Economic Evaluation Group, Inc. He analyzed the two loans and determined that the difference in the present value of the two loans (Sky Bank and Countrywide) was that the Countrywide Loan required a total repayment approximately $156,000 more than the Sky Bank loan based on the Truth in Lending disclosure statements.

{¶ 50} Wells Fargo argues that the interest rate on the Countrywide loan as determined by the Lees' expert was misleading because the interest rate had in fact adjusted downward to 4.625 percent.

21.

{¶ 51} We conclude that the Lees did raise a question of fact as to whether the new loan was procedurally unconscionable. However, the Lees also had to demonstrate substantive unconscionability.

{¶ 52} The Lees presented their own affidavits as evidence of substantive unconscionability. The Lees argue that they signed the loan documents without reading the documents, were unsophisticated borrowers and did not understand the refinancing process, did not receive copies of the documents they signed, relied on the false representations made by Stonefire, and they were under economic duress to close the loan after they followed the suggestion of Stonefire to not make their December mortgage payment to Sky Bank. The Lees also asserted that they did not understand that making the minimum payment would increase the principal balance and make it impossible to refinance.

{¶ 53} The Lees did not produce, however, any evidence that they were coerced into entering into the new loan and mortgage. They presented evidence that they were misled and *did not* read or receive the documents they executed, despite their signature on the notice of the right to cancel. However, there was no evidence that they *could not* have read or requested the documents they executed, or that they could not have exercised their right to cancel the contract. While they followed the advice of Stonefire and skipped their December payment, this fact alone was not sufficient to constitute substantive unconscionability.

22.

{¶ 54} Fifth, the Lees argue that Wells Fargo is barred by the doctrine of estoppel and laches and failure to mitigate damages. The Lees assert that Wells Fargo should have brought this action at the time of the default or asserted its claims as a counterclaim in the prior litigation.

{¶ 55} We have already addressed and rejected the argument that Wells Fargo was required to file a counterclaim in the prior litigation. We found that the doctrine of res judicata does not bar the current action filed by Wells Fargo. Furthermore, there is no legal basis for finding that Wells Fargo was required to file its debt collection action earlier than it did.

{¶ 56} Sixth, the Lees argue that Wells Fargo did not have clean hands and failed to comply with the terms of the National Mortgage Settlement, the settlement agreement in the federal action between Countrywide and the Lees. The Lees also argue that Wells Fargo misrepresented its status as a holder and owner of the note or its status as a creditor in this action. As a result, the Lees filed their prior lawsuits without joining Wells Fargo as a party.

{¶ 57} To establish the affirmative defense of unclean hands, a defendant must show that the plaintiff seeking relief engaged in reprehensible conduct with respect to the subject matter of the action. *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 16.

{¶ 58} We have already addressed in this case the issue that Wells Fargo was not a party to the prior action and was not required to file a counterclaim for foreclosure in that

23.

action. The Lees have presented no evidence to establish that Wells Fargo misrepresented its status other than the fact that the assignment of the mortgage may have occurred after the PSA closed. Therefore, we find there was no evidence presented that Wells Fargo had unclean hands or was bound by the settlement agreement.

{¶ 59} Having concluded that all of the Lees' arguments lack merit, we find their first assignment of error not well-taken.

{¶ 60} In the Lees' third assignment of error, they argue that the trial court lacked jurisdiction to rule on the Lees' Civ.R. 60(B) motion while their appeal of its judgment was pending.

{¶ 61} Under common law, the trial court loses jurisdiction to take action in a cause after an appeal has been taken until it is decided or remanded to the trial court for further proceedings. Except that the trial court may take any action in the case which would aid the appeal or regarding collateral matters which would not interfere with the appellate court's ability to reverse, modify, or affirm the judgment from which an appeal was taken. *In re J.S.,* 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9, *In re Kurtzhalz*, 141 Ohio St. 432, 48 N.E.2d 657 (1943), paragraph two of the syllabus, and *Howard v. Catholic Soc. Serv. of Cuyahoga Cty., Inc*., 70 Ohio St.3d 141, 146-147, 637 N.E.2d 890 (1994).

{¶ 62} The Lees filed their notice of appeal on January 27, 2014. The trial court summarily denied the Lees' motion for reconsideration/for relief from judgment on February 26, 2014.

24.

**{¶ 63}** First, a motion for reconsideration in the trial court is a nullity. *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St. 2d 378, 423 N.E.2d 1105 (1981), paragraph one of the syllabus. Second, while the trial court clearly lacked jurisdiction to rule on the Civ.R. 60(B) motion while the appeal was pending, the Lees never appealed from the February 26, 2014 judgment and, therefore, their third assignment of error must be stricken as it is unrelated to the issues on appeal.

**{¶ 64}** Having found that the trial court did not commit error prejudicial to appellant, the judgments of the Wood County Court of Common Pleas are affirmed. Appellants are ordered to pay the court costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.